McKiNNey, J.,
delivered tbe opinion of tbe court.
Tbis was an action of ejectment. Verdict and judgment were for tbe defendant, in tbe court below, and an appeal in error to tbis court.
Tbe case turns upon tbe effect and validity of a sale of tbe tract of land described in tbe declaration, made in pursuance of a decree of tbe circuit court of Jefferson, under wbicb tbe lessor of tbe plaintiff derives title to the premises.
It appears from tbe proof, tbat tbe tract of land sought to be recovered, was granted to one Robert Barnbill on tbe 18tb of October, 1824; that said Barnbill died intestate, in Jefferson county, in July, 1846, and administration on bis estate was granted to John H. Dunldn; tbat, at tbe December Term, 1846, of tbe circuit court of Jefferson, said administrator presented bis exhorte petition to said court for tbe sale of said land, for tbe payment of debts alleged to be due from tbe estate of tbe intestate, and for tbe discharge of wbicb tbe personal assets were represented to be insufficient. Tbe petition directly alleges, upon its face, tbat tbe intestate, Robert Barnbill, “ was a foreigner by bvrth, ct/nd died without leami/ng a/ny legal heirs Jmown to the petitioner
Upon tbis expa/rte petition, tbe court proceeded to decree a sale of tbe land, for tbe satisfaction of tbe sum of two *48 hundred and seventy-five dollars and eighty cents; that being the amount of the indebtedness of the estate, as reported by the clerk, beyond the personal assets; and on the 24th of Hay, 1847, the land was sold to the lessor of the plaintiff for three hundred and ten dollars; and in pursuance of said sale, at the December term, 1847, a decree was made confirming the sale, and divesting the title to said land “out of the hews and distributees” of said Barnhill, and vesting the same in the purchaser.
The foregoing is perhaps as much as need be stated, for the decision of the present case, of the altogether irregular and illegal proceedings under color of which said land was sold.
That the sale, upon the facts before stated, was utterly void, admits of no doubt.
Whether Barnhill was an alien or naturalized citizen, it is needless to inquire, if indeed any solution of that question were to be found in the record: for, upon either hypothesis, so far as respects the determination of this particular case, the result would be the same.
By a well established principle of the common law, of feudal origin and policy, whenever the blood of the person last seized became extinct, and the title of the tenant in fee failed, from want of heirs or other cause, the land escheated., or reverted to the original grantor, or lord of the fee, from whom it proceeded. And although feudal tenures do not exist in this country, yet it is a well established principle of American jurisprudence, that when the title to land fails from defect of heirs, “the State steps in the place of the feudal lord, by virtue of its sovereignty, as the original and ultimate proprietor of all the lands within its jurisdiction.”
*49 “And whenever tbe owner dies intestate, without leaving any inheritable blood; or if the relations whom he leaves are aliens, there is a failure of competent heirs, and the lands vest immediately in the State by operation of law: and no inquest of office is requisite in such cases.” 4 Kent’s Com. 424, 425, and authorities cited. 2 El. Com. 11, 12, 244.
By the Constitution and law of this State, all escheated property, of whatever description, is appropriated to the use of common schools, and the proceeds thereof become part of the “ common school fund.” See Constitution, Art. XI, § 10; Act of 1835, ch. 23, §§ 1, 6. And to the “Board of Commissioners of Common Schools” is given “the general superintendence of said fund,” and by the Act of 1835, above referred to, it is provided that all escheated money or property in this State, shall, on demand, be delivered to said Board, or their agent; and the Board is empowered “ to dispose of the same in such manner as they may deem best for the interest of the common school ñmd.”
Erom this brief view of the law applicable to the case under consideration, it will be .apparent that, from the face of the petition, the land in question escheated to the State, on the death of the intestate without heirs; and that the property being placed under the dominion and control of the Board of Commissioners of Common Schools, who are constituted a body politic and corporate, as Trustees of the fund, said Board was an indispensable party to the proceeding by the administrator, in order to subject said land to sale for the debts of the intestate. That the land vested in the State, charged with all the proper debts and liabilities of the intestate, has not, and cannot be controverted.
*50 We need not here repeat wbat bas been so often already declared by tbis court, that tbe want of proper parties, that is, tbe persons upon whom the title of the-intestate is cast by descent, or by operation of law, will render a sale of land in a case like tbe present utterly inoperative and void. Tbe striking absurdity of tbe converse of tbis proposition, is sufficiently illustrated by tbe decree in tbe case before us, wbicb assumes to divest tbe legal title to tbe land in question out of persons not before tbe court nor parties to tbe proceeding.
The principles laid down so repeatedly by tbis court, in reference to tbis class of cases, we are not disposed to ■ relax; and from wbicb it very clearly follows, upon tbe ground of want of proper and necessary parties, as well as upon other distinct grounds set forth in the record, but which we do not think it essential to notice, that tbe sale of tbe land in tbe present case was a nullity, and consequently communicated no right or title whatever to tbe plaintiff. See 10 Humph. 223; Ib. 610.
Judgment affirmed.